## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| TRI STATE TRUCKING COMPANY | : | |
| | : | CASE NO. 4:15-04444 |
| Debtor | : | |
| | : | |
| TRI STATE TRUCKING COMPANY | : | |
| | : | |
| Movant | : | |
| v. | : | |
| | : | |
| CITIZENS & NORTHERN BANK | : | |
| | : | |
| Respondent | : | |

## EXPEDITED MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND GRANTING ADEQUATE PROTECTION

The Expedited Motion of Tri State Trucking Company, Debtor and Movant herein, by and through its attorneys, for an Interim Order Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Granting Adequate Protection (the "Motion"), is as follows:

## THE DEBTOR

1. On October 13, 2015, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. The Debtor continues to conduct its business and affairs as a debtor-in-possession in accordance with 11 U.S.C. §§1107 and 1108. At this time, no trustee, examiner or creditors' committee has been appointed in the Debtor's case.

1

2. Tri State Trucking Company (the "Debtor") operates an over the road logistics company hauling various freight of its customers. The Debtor employs approximately 50 people and operates from its headquarters located at 16064 Route 6, Mansfield, Pennsylvania 16933 (the "Operations Facility"). The Operations Facility is owned by a separate, non-insider, non-debtor entity.

## THE RESPONDENTS

3. As of the petition date, the Debtor owed approximately $1,354,153.51 to Citizens & Northern Bank ("C&N") as more fully set forth below:

| Loan | Date of Loan | Original Amount | Current Balance |
|---|---|---|---|
| C&N Term Loan 1* | December 29, 2011 | $90,000.00 | $6,440.11 |
| C&N Factoring Loan | February 8, 2012 | Up to $2,000,000.00 | $1,285,009.27 |
| C&N Term Loan 2* | April 26, 2013 | $300,000.00 | $62,704.13 |
| Total | | Up to $2,390,000.00 | $1,354,153.51 |

*C&N Term Loan 1 and C&N Loan 2 shall hereinafter be collectively referred to as the "C&N Term Loans".

4. According to public records, the C&N Term Loans and the C&N Factoring Loan may each be secured by liens against the Debtor's goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights . . . general intangibles . . . and any and all proceeds of the foregoing" (hereinafter, the "C&N Collateral") in the following order of priority:

| Loan | Date of Loan | Original Amount | Current Balance | Priority |
|---|---|---|---|---|
| C&N Term Loan 1 | December 29, 2011 | $90,000.00 | $6,440.11 | 1 |
| C&N Factoring Loan | February 8, 2012 | Up to $2,000,000.00 | $1,285,009.27 | 2 |

| Loan | Date of Loan | Original Amount | Current Balance | Priority |
|---|---|---:|---:|:---:|
| C&N Term Loan 2 | April 26, 2013 | $300,000.00 | $62,704.13 | 3 |
| **Total** | | **Up to $2,390,000.00** | **$1,354,153.51** | |

5. According to the best estimates available, the value of the C&N Collateral, not including equipment, inventory, vehicles and rolling stock, is approximately $1,932,574.29. Therefore, the value of C&N's interest in the C&N Collateral for each of the C&N Term Loans and the C&N Factoring Loan is as follows:

| Loan | Current Balance | Priority | Secured | Unsecured |
|---|---:|:---:|---:|---:|
| C&N Term Loan 1 | $6,440.11 | 1 | $6,440.11 | $0.00 |
| C&N Factoring Loan | $1,285,009.27 | 2 | $1,285,009.27 | $0.00 |
| C&N Term Loan 2 | $62,704.13 | 3 | $62,704.13 | $0.00 |
| **Total** | **$1,354,153.51** | | **$1,354,153.51** | **$0.00** |

6. The C&N Collateral, and the proceeds thereof, constitute cash collateral pursuant to section 363(a) of the Bankruptcy Code (the "Cash Collateral").

7. The Debtor now seeks authority to use Cash Collateral beginning October 13, 2015 for a period of at least 30 days, pending a final hearing on this Motion. At the final hearing, the Debtor will seek authority to use the cash collateral for an additional 150 days.

8. The Debtor submits that its use of Cash Collateral will not materially impair the secured claim of C&N, which is adequately protected during the Cash Collateral Period for the following reasons:

    a. The Debtor will make monthly payment to C&N in the amount of $11,308.82, representing a full interest and principle payment in connection with C&N Loan 1 ($2,170.14) and C&N Loan 2 ($9,138.68) as adequate protection for C&N's interest in the Cash Collateral pursuant to those Loans; and

3

Case 4:15-bk-04444-JJT    Doc 14    Filed 10/15/15    Entered 10/15/15 10:40:04    Desc
Main Document    Page 3 of 8

b. The Debtor will continue to perform under, and remain in compliance with, the terms of the C&N Factoring Loan, as more fully set forth in the Debtor's Emergency Motion for entry of Interim and Final Orders, pursuant to 11 U.S.C. §§105, 361, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, 1) Authorizing Post-Petition Financing, 2) Authorizing Debtor to Enter into Security Agreement, 3) Granting Liens and Security Interests, 4) Approving Notice, and 5) Scheduling Final Hearing (the "DIP Motion") which has been filed, or will be filed; and

c. The value of the Cash Collateral is approximately $1,932,574.29. The aggregate value of C&N's interest in the Cash Collateral pursuant to the C&N Term Loans and the C&N Factoring Agreement is only $1,354,153.51. Therefore, an equity cushion of $578,420.78 exists and serves as additional adequate protection for the value of C&N's interest in the Cash Collateral; and

d. The periodic payment referenced above will also serve as adequate protection for C&N's interest pursuant to C&N Loan 3 by paying down the senior obligations each month,[1] thereby increasing the value of the C&N's interest in the Cash Collateral relative to C&N Loan 3; and

e. C&N will be granted a first priority replacement lien in all post-petition property of the Debtor of the same nature, and to the same extent as C&N had in pre-petition property of the Debtor; and

f. To the extent of the Debtor's use of Cash Collateral results in a decrease in the value of C&N's interest in its collateral, C&N shall be entitled to assert a super priority claim under 11U.S.C.§507(b) in the amount of the decrease in its interest in its collateral.

## JURISDICTION

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C §1334. This is a core proceeding pursuant to 28 U.S.C §157(b)(2). Venue of the Debtor's Chapter 11 case is proper pursuant to 28 U.S.C §§1408 and 1409.

## RELIEF REQUESTED – USE OF CASH COLLATERAL

---

[1] Payments made to senior lien holders can provide adequate protection for a junior lien holder such as a second or third mortgagee by preserving or increasing the junior lien holders interest in the property. Matter of Mulcahy, 5 B.R. 558 (Bank D. Conn. 1980); In re American Restaurants Management Corp., 8 B.R. 596 (Bankr. S.D. Fla. 1981); In re 666 Associates/Streeterville Utility Co., Inc. 65 B.R. 819 (N.D. Ill. 1986).

4

10. In order to continue in business, it is absolutely vital that the Debtor have use of Cash Collateral so that it can meet its operating expenses. The Debtor is currently seeking use of Cash Collateral for not less than thirty (30) day period beginning on October 13, 2015, (the "Cash Collateral Period"). The Debtor will seek an additional 150 days at the final hearing in this matter.

11. The Debtor believes, and therefore avers, that it is statutorily entitled to the absolute use of cash collateral for the ordinary course of business expenditures, as the Debtor can provide adequate protection to the Secured Parties.

    **A.    The Legal Standard**

12. Section 363 (c) (2) of the Code provides, in relevant part:

> The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless –
> (a)     each entity that has an interest in such cash collateral consents; or
> (b)     the court, after notice and hearing, authorizes such use, sale or lease in accordance with the provisions of this section.
> 11 U.S.C §363(c)(2).

13. The Debtor submits that it may use Cash Collateral to the extent it can demonstrate that the respective values of the Secured Creditors' interests are adequately protected for such use of Cash Collateral. *See* 11 U.S.C. §363(e) and (p).

14. The Bankruptcy Code does not expressly define adequate protection, but section 361 states that it may be provided by several means, including (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the indubitable equivalent of a secured creditor's interest. 11 U.S.C. §361.

15. Adequate protection in the form of the "indubitable equivalent of the secured creditor's interest" allows the court discretion in fashioning the form of adequate protection. An

5

Case 4:15-bk-04444-JJT    Doc 14    Filed 10/15/15    Entered 10/15/15 10:40:04    Desc
Main Document      Page 5 of 8

analysis of adequate protection is therefore required on a case-by-case basis. In re O'Conner, 808 F.2d 1393, 1397 (10th Cir. 1987); In re Swedeland Development Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994).

16. In applying the adequate protection standard, the Court must (1) establish the value of the interest entitled to protection, (2) identify the risk to the interest holder's value resulting from the use of the property by the debtor, and (3) determine whether the adequate protection proposal protects value as nearly as possible against risks to that value.

17. The "value of the interest" entitled to protection referenced in the first element above is limited to the lesser of the value of an entity's interest in collateral or the amount of the entity's claim. *See* In re Aegean Fare, Inc., 33 B.R. 745 (Bankr. D. Mass. 1983), order modified on other rounds, 34 B.R. 965 (Bankr. D. Mass. 1983).

18. Identifying the "risk" as required by the second element above requires the Court to determine, *inter alia*, whether the property securing its interest is diminishing in value[2] or if the protected entity is over-secured.[3]

### B. Application of the Standard

19. As set forth in paragraph 5 above, the value of C&N's interest in the Cash Collateral pursuant to the C&N Term Loans and the C&N Factoring Loan as of the date of the Petition was approximately $1,354,153.51. See In re Aegean Fare, Inc., 33 B.R. 745 (Bankr. D. Mass. 1983). This is the "value of the interest" that may be entitled to protection. In re Martin, 761 F.2d 472, 476−77 (8th Cir.1985).

---

[2] An interest in property may be deemed to be adequately protected where the property is not depreciating. In re Orlando Trout Creek Ranch, 80 B.R. 190 (Bankr. N.D. Cal. 1987).

4 If a creditor is over secured, it may not be entitled to additional adequate protection because its interests are not at risk. In re Megan-Racine Associates, Inc., 202 B.R. 660 (Bankr. N.D.N.Y. 1996) (citing In re Gallegos Research Group, Corp., 193 B.R. 577, 584 (Bankr. D.Colo. 1995).

20. Next, the Court is required to identify the "risk" to the value of the C&N's interest in the Cash Collateral by determining whether the Cash Collateral will diminish in value if used by the Debtor. Id. As demonstrated by the Debtor's Monthly Operating Budget attached hereto as Exhibit A, the value of the Cash Collateral does not diminish over the projected term of use. **See Exhibit A – Monthly Operating Budget**. Accordingly, there does not appear to be any risk to the value of C&N's interest in the Cash Collateral resulting from the Debtor's continues use of same.

21. Notwithstanding the foregoing, the Debtor is offering a periodic (monthly) cash payment in the amount of $11,308.82, representing a full interest and principle payment in connection with the C&N Term Loans and as adequate protection for C&N's interest in the Cash Collateral. The Debtor will also continue to perform under, and remain in compliance with, the terms of the C&N Factoring Loan, as more fully set forth in the DIP Motion. In addition, C&N will also be granted a first priority replacement lien in all post-petition property of the Debtor of the same nature, and to the same extent as C&N had in pre-petition property of the Debtor. Finally, to the extent that the Debtor's use of Cash Collateral results in a decrease in the value of C&N's interest in the Cash Collateral, C&N shall be entitled to assert a super priority claim under 11 U.S.C. §507(b) in the amount of the decrease in its interest in its collateral.

22. The Debtor can provide adequate protection to C&N for the use of Cash Collateral in the form of replacement liens and additional liens and super-priority claims. It is therefore appropriate and essential to the preservation of the Debtor's going concern value that the Court authorize the Debtor's interim use of Cash Collateral pursuant to 11 U.S.C. §363(c)(2)(B) for ordinary course of business expenditures and such other expenditures as may be authorized by this Court.

7

Case 4:15-bk-04444-JJT    Doc 14    Filed 10/15/15    Entered 10/15/15 10:40:04    Desc
Main Document      Page 7 of 8

23. It is in the best interests of the Debtor, its creditors, and in the estate for an Interim Order to be entered authorizing the Debtor's use of Cash Collateral upon the terms and conditions set forth in the proposed Interim Order, a copy of which is attached hereto and incorporated herein by reference.

24. No previous requests for the relief sought herein has been made on this Court or any other court.

25. Notice of this motion has been provided to the Office of the US Trustee, Debtor's 20 largest unsecured creditors, those parties requesting service, and the Respondents. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully request that this Court (i) enter the attached proposed Interim Order Authorizing Use of Case Collateral; (ii) schedule a hearing on the entry of a final order authorizing the use of Cash Collateral; and (iii) grant such other further relief as may be just and proper.

Respectfully submitted,

METTE, EVANS & WOODSIDE

Date: October 15, 2015　　　　By: */s/Henry W. Van Eck*
　　　　　　　　　　　　　　　　Henry W. Van Eck, Esquire
　　　　　　　　　　　　　　　　3401 North Front Street
　　　　　　　　　　　　　　　　Harrisburg, PA 17110
　　　　　　　　　　　　　　　　(717) 232-5000