IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| TRI STATE TRUCKING COMPANY | : | |
| | : | CASE NO. 4:15-04444 |
| Debtor | : | |
| | : | |
| TRI STATE TRUCKING COMPANY | : | |
| | : | |
| Movant | : | |
| v. | : | |
| | : | |
| CITIZENS & NORTHERN BANK | : | |
| | : | |
| Respondent | : | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING,
2) AUTHORIZING DEBTOR TO ENTER INTO SECURITY AGREEMENT,
3) GRANTING LIENS AND SECURITY INTERESTS, 4) APPROVING NOTICE AND
5) REQUEST FOR EXPEDITED HEARING THEREON**

The Motion of Tri State Trucking Company, Debtor and Movant herein, by and through its attorneys, for entry of Interim and Final Orders, pursuant to 11 U.S.C. §§105, 361, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, 1) Authorizing Post-Petition Financing, 2) Authorizing Debtor to Enter into Security Agreement, 3) Granting Liens and Security Interests, 4) Approving Notice, and 5) Scheduling Final Hearing (the "DIP Motion"), is as follows:

**I.     BACKGROUND**

1.     Tri State Trucking Company (the "Debtor") operates an over the road logistics company hauling various freight of its customers. The Debtor employs approximately 50 people and operates from its headquarters located at 16064 Route 6, Mansfield, Pennsylvania 16933 (the

1

"Operations Facility"). The Operations Facility is owned by a separate, non-insider, non-debtor entity.

2. Respondent, Citizens & Northern Bank ("C&N"), is Bank and Lending Institution with a mailing address of 90-92 Main Street, Wellsboro, Pennsylvania 16901.

3. On October 13, 2015, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq (the "Bankruptcy Code"). The Debtor continues to conduct its business and affairs as a debtor-in-possession in accordance with 11 U.S.C. §§1107 and 1108.

4. At this time, no trustee, examiner or creditors' committee has been appointed in the Debtor's case.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

6. The statutory predicates for the relief sought herein are Bankruptcy Code Sections 105, 361, 363 and 364 of the Bankruptcy Code and Rule 4001, and rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. Prior to the filing of the instant case, C&N and the Debtor engaged in a factoring relationship wherein the Debtor offered and C&N purchased the Debtor's accounts receivable under a factoring, security and services agreement. The financial accommodations offered to the Debtor pre-petition are evidenced by a Factoring and Security Agreement dated February 8, 2012 as amended and modified from time to time, and an attendant UCC Financing Statement filed by C&N on July 10, 2012 with the Pennsylvania Department of State at Filing Number 2012112004454.

8. The aforementioned UCC Financing Statement appears to duly perfect a first priority security interest taken on substantially all of the Debtor's assets, including without limitation: "goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights . . . general intangibles . . . and any and all proceeds of the foregoing" (hereinafter, the "C&N Collateral"). For the purpose of clarity, the Debtor is also the owner of various semi-trucks and trailers subject to security interests of other lenders as evidenced by duly notated liens on the Certificates of Title. C&N does not hold a security interest in these specific assets.

9. The Debtor has or will be proposing a Cash Collateral Motion to authorize the usage of cash collateral which may be subject to C&N's security interest. However, even with the usage of the cash collateral, the Debtor requires debtor-in-possession financing in order to enhance its prospects for successful reorganization.

10. The Debtor and C&N propose to continue their pre-petition relationship and enter into a similar factoring, security and services agreement post-petition (the "DIP Factoring Agreement").

11. The proposed DIP Factoring Agreement, attached hereto and marked as Exhibit "A" will enable the Debtor to pay its ongoing operating expenses which are necessary to maintain the Debtor's operation, pay its creditors and eventually propose a Chapter 11 Plan of Reorganization capable of confirmation.

## II. RELIEF REQUESTED

### A. Concise Statement

12. By this motion, the Debtor seeks, among other things, this Court's authorization

3

Case 4:15-bk-04444-JJT    Doc 15    Filed 10/15/15    Entered 10/15/15 10:43:41    Desc
Main Document    Page 3 of 11

under sections 105, 364(c)(1) and 364(c)(2) of the Bankruptcy Code:

    (a)    to obtain secured post-petition factoring (the "Post-Petition Factoring") up to the principal amount of $2,000,000.00 from C&N (the "Post-Petition Lender") through the DIP Factoring Agreement attached hereto and incorporated herein as Exhibit "A" (the "DIP Factoring Agreement");

    (b)    to grant the Post-Petition Lender a perfected first priority lien on and security interest in the C&N Collateral, as defined above;

    (c)    Schedule a final hearing on this Financing Motion (the "Final Hearing") and establish notice procedures in respect to the Final Hearing to be held by this Court to consider entry of a final order authorizing the Post-Petition Financing.

13. The Debtor has determined that post-petition financing is necessary for the Debtor to operate its business in Chapter 11 and for the Debtor's successful reorganization. Specifically, because the Debtor's existing cash on hand will not be sufficient to fund its restructuring, the Debtor has concluded that obtaining a firm commitment for post-petition financing is necessary and is in the best interest of the Debtor's estate.

14. The Debtor has actively sought other sources to finance its operations, including the pre-petition lender, but has determined that the Post-Petition Lender's proposal for the Post-Petition Factoring is, under the circumstances, the most favorable and adequate to address is the Debtor's working capital needs.

### B. Summary of Essential Terms

15. The Factoring Agreement and other documents to be executed in connection there with (collectively, the "DIP Factoring Documents") are the result of an arms-length negotiation between the Debtor and C&N. A summary of the essential terms of the Post-Petition Financing to be

incorporated into the DIP Factoring Documents are as follows[1]:

    (a)   **Service Charge**: A discount equal to one and eight-tenths percent (1.8%) of the Face Amount of each Receivable the Business offers to the Bank that is acquired by the Bank. **Exhibit A, Para. 1.13 & 2.4.**

    (b)   **Variable Service Charge**: The daily amount charged by C&N for each day a Receivable remains due between 20 days from the Posting and 104 days from the Posting of each Receivable (0.025% of the Face Amount). **Exhibit A, Para. 1.14 & 2.3.**

    (c)   **Reserve**: The retained portion of the sums payable to the Debtor for the sale of a Receivable. The amount of the reserve is dependent upon the age of the Receivable. The scale is as follows: 20% for Receivables less than 60 days old from the invoice date; 30% for Receivables between 61 and 90 days old from the invoice date; 30% for Receivables between 61 and 90 days old from the invoice date. **Exhibit A, Para. 1.12 & 2.7.**

    (d)   **Reserve Account**: The deposit account held by C&N in the name of the Debtor containing the Reserve. The Reserve Account is used to fund the Debtor's Repurchase Obligation. **Exhibit A, Para. 1.12 & 2.7.**

    (e)   **Repurchase Obligation**: The Debtor will be obligated to repurchase any Receivable purchased by C&N that remains outstanding more than 120 days from the date of the Invoice. The Repurchase Obligation will be equal to the Face Amount of the Receivable, plus attorney/s fees (if incurred) and accrued and unpaid finance charges related to Such Receivable. **Exhibit A, Para. 1.11 & 3.1.**

    (f)   **Maturity Date**: The term of the Factoring Agreement is twelve (12) months from the date of execution with automatic renewal provisions should the Debtor not provide written notice of termination as more fully outlined in the Factoring Agreement. **Exhibit A, Section 10.**

    (g)   **Events of Default**: Events of default shall include the following

---

[1] Any capitalized terms used in the following summary that are not defined herein are ascribed the meanings given to such terms in the DIP Factoring Agreement. Moreover, to the extent that the summary of the terms of the DIP Factoring Agreement is inconsistent with the DIP Factoring Agreement, the terms of the DIP Factoring Agreement and any Interim Order control.

events:

    i.    Failure of the Debtor to pay any obligation under the Factoring Agreement upon demand or according to its terms;

    ii.    Breach by the Debtor of any of its Representations and Warranties contained in the DIP Factoring Agreement

    iii.    Failure of the Debtor to perform any obligation, covenant or liability within 10 days or written notice of same; or

    iv.    Other standard terms generally applicable to transactions of this nature, as more fully described in **Paragraph 8.1** of the DIP Factoring Agreement.

(h) **Borrowing Limits**: A total credit limit of up to two million and no/100 ($2,000,000.00) on interim and final basis. **Exhibit A, Para. 2.1.**

(i) **Borrowing Conditions**: The commitment to lend up to two million and no/100 ($2,000,000.00) on a revolving basis is conditioned upon Bankruptcy Court Approval. **Exhibit A, Para. __.**

### C. Special Provisions

16. The nature and extent of special provisions contained within the proposed Post-Petition Financing are as follows:

(a) **Lien Granted Pursuant to 11 U.S.C. §364(c)(2)**: Any claim under the Post-Petition Financing shall be secured by a perfected first priority lien on and security interest in all existing and after acquired C&N Collateral, including the Cash Collateral (the "Post-Petition Lien").

17. The proposed DIP Factoring Documents, and the proposed Order approving same, do not include any of the following:

(a) Provisions that grant cross-collateralization protection - other than replacement liens or other adequate protection - to C&N.

(b) Provisions or findings of fact that bind the estate or parties in interest with respect to validity, perfection, priority, or amount of C&N's

6

prepetition lien or debt or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order for relief and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters.

(c) Provisions that seek to waive any rights the estate may have under 11 U.S.C. § 506(c).

(d) Provisions that grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, and 549.

(e) Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided under 11 U.S.C. § 552(b).

(f) Provisions that provide treatment for the professionals retained by a committee appointed by the United States trustee different from that provided for the professionals retained by the debtor with respect to a professional fee carveout, and provisions that limit the committee counsel's use of the carveout.

(g) Provisions that prime any secured lien without the consent of the lienholder.

(h) Provisions that release the secured creditor from lender liability.

(i) Provisions that grant the lender expedited relief from the automatic stay under 11 U.S.C. § 362 or relief from the automatic stay without further order of court.

(j) A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under §363(c), or request authority to obtain credit under §364.

(k) The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order.

(l) A waiver or modification of the applicability of non-bankruptcy law

7

relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien.

(m) A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action.

(n) The indemnification of any entity.

### III. BASIS FOR RELIEF

#### A. Statutory Provisions

18. Section 364(c) of the Bankruptcy Code provides, in relevant part, that if a Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense, then the Court may, after notice and a hearing, authorize the Debtor to obtain credit on a super-priority basis that is secured by a lien on property of the estate that is not otherwise subject to a lien. 11 U.S.C. §364(c)(1) & (2).

19. As set forth above, the Debtor has been unable to obtain long term unsecured credit allowable under section 503(b)(1) as an administrative expense. Accordingly, the Debtor now seeks authority to obtain credit secured by a lien on the C&N Collateral, which is not otherwise currently subject to a lien in favor of any other person or entity.

20. Federal Rule of Bankruptcy Procedure 4001(c)(1)(A) and Local Rule 4001-3 provide, in relevant part, that any motion for authority to obtain credit "shall be accompanied by a copy of the credit agreement and proposed form of order" as well as "a budget covering the time period during which the proposed financing will remain in effect."

21. The proposed DIP Factoring Agreement is attached hereto and incorporated herein as Exhibit "A".

8

22. The form of the Order approving the proposed Financing is attached hereto and is being filed contemporaneously herewith.

23. A copy of the budget that will remain in effect for the duration of the Post-Petition Financing is attached to Exhibit "A", which is incorporated herein.

24. Federal Rule of Bankruptcy Procedure 4001(c)(1)(B) sets forth the contents required of a motion for authority to obtain credit including, among other things, a concise statement of the relief requested and summary of all material provisions of the proposed credit agreement and form of order, including interest rate, maturity, events of default, liens, borrowing limits, and borrowing conditions.

25. A concise statement of the relief requested is set forth above in paragraph 14.

26. A summary of all material provisions of the proposed DIP Factoring Agreement, including interest rate, maturity, events of default, liens, borrowing limits, and borrowing conditions is set forth above in Paragraph 17.

### B. Business Judgment

27. The Debtor, in its business judgment, has determined that financing is available only under section 364(c) of the Bankruptcy Code. Specifically, the Debtor negotiated with certain pre-petition lenders at arms' length and was unable to negotiate any financing arrangement with them.

28. Provided that this business judgment does not contravene provisions of and policies underlying the Bankruptcy Code, courts typically grant any debtor considerable deference in acting in accordance with its business judgment. See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2nd 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonable business); In re Ames Department Stores, 115 B.R. 34, 40 (S.D.N.Y.

1990 ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest")).

29. The Post-Petition Financing is for the benefit of the Debtor's estate and its creditors. Such financing is the sole means of preserving and enhancing the Debtor's going concern value.

30. With the credit provided by the Post-Petition Financing, the Debtor will be able to fund its works in process, timely perform its contractual obligations, pay its employees, and operate its business order to preserve the ongoing value for the benefit of all parties-in-interest.

31. In addition, the availability of credit under the Post-Petition Financing will likely be viewed favorably by the Debtor's employees, customers, and builders in the industry and thereby help promote the Debtor's successful reorganization.

32. Indeed, without the financing provided for in the Post-Expedition Financing, the Debtor will not be able to generate more builder contracts and meet its direct operating expenses. This will cause the Debtor to suffer irreparable harm and its entire reorganization effort will be jeopardized.

33. The terms and conditions of the DIP Factoring Agreement are fair and reasonable and were negotiated by the parties in good faith and at arms-length. Accordingly, the Post-Petition Lenders should be accorded the benefits of section 364(e) of the Bankruptcy Code with respect to the Post-Petition Financing.

### IV. NOTICE OF FINAL HEARING AND OBJECTION DATE

34. In accordance with Federal Rule of Bankruptcy Procedure 4001(c)(2), the Debtor

seeks authority to serve a copy of the attached notice, which fixes the time and date for filing of objections to this motion, if any, and require service of the same upon (a) council to any official committee of unsecured creditors appointed in this case, if any; (b) the Office of the United States Trustee; (c) all parties who have filed requests for notice under Bankruptcy Rule 2002; (d) council for the Pre-Petition Lenders; and (f) the twenty (20) largest unsecured creditors of the Debtor at their last known addresses.

35. The Debtor requests that the Court consider such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

36. A copy of the proposed Notice required by Federal Rule of Bankruptcy Procedure 4001(c)(3) and Local Bankruptcy Rule 4001-3(b) is attached hereto and will be served at the instruction of the Court in accordance with Federal Rule of Bankruptcy Procedure 4001(c)(1)(C).

WHEREFORE, the Debtor respectfully request that this Court enter an Order granting the relief requested herein and further providing the Debtor with all such other relief as is proper and just.

Respectfully submitted,

METTE, EVANS & WOODSIDE

Date: October 15, 2015          By: s/*Henry W. Van Eck*
                                    Henry W. Van Eck, Esquire
                                    3401 North Front Street
                                    Harrisburg, PA 17110
                                    (717) 232-5000